IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JORGE HARRIS, a/k/a GEORGE HARRIS, | ) ) |
| Plaintiff, | ) ) Case No. 1:16-cv-0038 (Erie) |
| vs. | ) ) |
| NANCY GIROUX, ET AL. | ) RICHARD A. LANZILLO ) UNITED STATES MAGISTRATE JUDGE |
| Defendants. | ) ) |

MEMORANDUM OPINION

I.     Introduction

Initially acting *pro se*, Plaintiff Jorge Harris, a/k/a George Harris, Jr. ("Harris"),

commenced this action by filing a complaint against thirteen individuals employed by the

Pennsylvania Department of Corrections based upon events and actions that occurred while

Harris was incarcerated at the Pennsylvania State Correctional Institution at Albion ("SCI-

Albion").[1]  On January 6, 2017, Harris filed a three-count amended complaint asserting claims

pursuant to 42 U.S.C. § 1983 for violations of rights secured by the U.S. Constitution and for

violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the

Rehabilitation Act, 29 U.S.C. § 701. [ECF No. 23]. By Order dated July 19, 2017, the Court

dismissed the claims against all defendants except Superintendent Nancy Giroux, Deputy

Melinda L. Adams, Counselor Nicole Norton, Correction Officer Benjamin Behringer, and

Acting Major of Unit Management Melanie Kosinski. [*See* ECF No. 32]. These defendants

---

[1] Specifically, the Complaint named the following SCI-Albion personnel as defendants: Superintendent Nancy Giroux; Deputy Melinda L. Adams; Deputy Michael R. Clark; Deputy Barry R. Smith; Counselor Nichole Norton; CO1 Benjamin Beringer; Hearing Examiner Ryan Szylewski; Grievance Coordinator Ronnie Martucci; Unit Manager Bryan E. Flinchbaugh; Intelligence Captain Earl J. Jones; Acting Major of Unit Management Melanie Kosinski; and DOC Secretary Wetzel.

1

have now moved for summary judgment on the remaining claims of Harris's amended complaint. ECF No. 67. For the reasons that follow, their motion will be **GRANTED** in part and **DENIED** in part.

II. Relevant Procedural History

This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and § 1343. All parties have consented to the jurisdiction of a United States Magistrate Judge in this matter. ECF No. 4, ECF No. 18. *See also* 28 U.S.C. § 636(c). On September 24, 2018, this case was reassigned from United States Magistrate Judge (now United States District Judge) Susan Paradise Baxter to the undersigned. ECF No. 63.

Harris initiated this action by filing a pro se complaint on February 11, 2016. ECF No. 1. On January 6, 2017, following the entry of appearances by counsel for Harris, he filed an amended complaint. ECF No. 23. Harris's amended complaint asserted three causes of action: Count I, a First Amendment retaliation claim alleging that Defendants retaliated against him for filing grievances and inmate requests by unjustifiably confining him in the restricted housing unit ("RHU") for almost four months, refusing his numerous requests for reasonable accommodations for his disabilities, and subjecting him to constant verbal and emotional abuse. (ECF No. 23, ¶¶ 104-111); Count II, a claim under both the Rehabilitation Act and the ADA asserting that Defendants discriminated against him and refused to provide reasonable accommodations on account of his disabilities. (*Id.* at ¶¶ 112-118); and Count III, an Eighth Amendment claim arising from Harris's confinement in the RHU for 108 days. (*Id.* at ¶¶ 119-127).

Defendants filed a motion to dismiss the amended complaint on January 20, 2017, (ECF No. 25), which motion the Court granted in part by Order dated July 19, 2017. ECF No. 31; ECF

2

No. 32. The Court dismissed (1) all claims for monetary damages against the Defendants in their official capacities based upon Eleventh Amendment immunity, (2) all constitutional claims against Giroux, Clark, Adams, Smith, Norton, Szelewski, Martucci, Flinchbaugh, Jones, Kosinski, and Wetzel based upon their lack of personal involvement, (3) Harris's Eighth Amendment claim to the extent it is based upon the length of his confinement in the RHU, Defendants' failure to accommodate his disabilities, and verbal and emotional abuse, and (4) Harris's ADA and Rehabilitation Act claims for monetary damages against Defendants in their individual capacities. *Id.* The following claims survived the Motion to Dismiss: (1) Harris's Eighth Amendment claim against Defendant Benjamin Behringer based upon his alleged deprivation of food for fifteen days; (2) Harris's First Amendment retaliation claim against Defendants Nicole Norton, Melinda L. Adams and Behringer for confining Harris in the RHU from May 11, 2015 until August 27, 2015, allegedly in retaliation for his filing of a prior lawsuit and submission of several grievances; and (3) Harris's ADA and Rehabilitation Act claims against Defendants Giroux and Kosinski, in their official capacities only, for prospective injunctive relief relating to the denial of a telephone for the hearing-impaired and a vibrating watch. ECF No. 32.

The remaining Defendants filed an answer to Harris's amended complaint on August 2, 2017. ECF No. 33. On October 15, 2018, following the completion of discovery, the Defendants filed their motion for summary judgment. ECF No. 67. Defendants contend that they are entitled to judgment as a matter of law on all remaining claims based upon Harris's failure to exhaust available administrative remedies. Alternatively, they argue that Harris's retaliation claim and Eighth Amendment claim are legally insufficient based upon the record and that Harris's ADA and Rehabilitation Act claims for prospective injunctive relief should be

3

dismissed as moot based upon his release from incarceration.[2] The motion has been fully briefed and is ripe for decision.

III.    Factual Background

The following relevant factual background is taken from Defendants' Concise Statement of Material Facts [ECF No. 69], Harris's Response to the Defendants' Concise Statement and Statement of Additional Material Facts [ECF No. 84], and Defendants' Response to Harris's Statement of Additional Material Facts [ECF No. 88]. Unless otherwise specified, the facts recited in this section are undisputed. Where material, disputed facts are noted.

Harris was incarcerated at SCI-Albion from May 11, 2015 until March 9. 2018. ECF No. 69, at ¶ 7; ECF No. 84, at 7. Harris was placed in the institution's RHU upon his arrival on May 11 and remained housed in the RHU until August 27, 2015. *Id.* at ¶¶8-9. Although Defendants dispute the extent of Harris's disabilities and limitations, ECF No. 88, at 1, ¶ 1, the record supports that Harris is blind in one eye and functionally deaf. ECF No. 84 at 12, ¶ 1. The prison intake medical records state that Harris is hard of hearing/deaf, suffers from chronic illness, needs or wears glasses and hearing aids, and is vision-impaired. ECF No. 86-6, at 3. Further, that record indicates that Harris cannot undertake work where binocular vision is required. *Id.* at 2. Harris's blindness in one eye is also noted in the record of a lawsuit he filed several years earlier in the United States District Court for the Eastern District of Pennsylvania, challenging the care he received for an eye injury while incarcerated at SCI-Graterford. *Harris*

---

[2] In his brief, Harris agreed that his release from custody rendered his ADA and Rehabilitation Act claims moot. ECF No. 68 at 7; ECF No. 85, at 12. The Court concurs in this assessment and will grant summary judgment in favor of Defendants Giroux and Kosinski on those claims.

4

*v. Arias, et al.*, 2013 WL 5777027 at \*1 (E.D. Pa. Oct. 25, 2013) (quoting deposition testimony of physician that Harris's sight was "permanently lost in that eye.").[3]

The fact of Harris's prior lawsuit is particularly relevant to the instant litigation. Indeed, Harris's remaining claim of retaliation is based in large part on the existence of this lawsuit.[4] Despite what they deem a "reasonable investigation," the Defendants claim they are without sufficient knowledge or information to admit the existence of Harris's prior lawsuit against the Department of Corrections. *See* ECF No. 33, at 6, ¶¶ 26-37. Regardless, the Court takes judicial notice of this prior lawsuit because it is a matter of public record. *See, e.g., Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764, 772 (3d Cir. 2013) (citation omitted); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F3d 406, 425 (3d Cir. 2008) (explaining that the court may take judicial notice of prior lawsuits).[5]

---

[3] The District Court noted that Harris's blindness was actually confirmed during a previous stay at SCI-Albion. *Harris v. Arias, et al.*, 2015 WL 5777027 at \*5 (E.D. Pa. Oct. 25, 2013). *See also* ECF No. 23, at 6, ¶ 28.

[4] There is confusion with regard to this lawsuit, the nature of the retaliation claim, and the scope of the Court's prior ruling on Defendants' motion to dismiss. *See generally* ECF No. 31. In their Concise Statement of Material Facts, Defendants urge the Court to take judicial notice of Harris's prior lawsuit. Indeed, much of the Defendants' argument attacking the merits of Harris's claim of retaliation focuses on this prior lawsuit. *See, e.g.*, ECF No. 68, at 11-16. But Harris, in his Response to the Defendants' Concise Statement, objects to judicial notice of this lawsuit, claiming that the Court already rejected the prior lawsuit as a basis for his retaliation claim. ECF No. 84, at 8-9, ¶39 and n. 13. Harris misapprehends the Courts' ruling on the motion to dismiss. In the opinion on the Defendants' motion to dismiss, this Court did note that ". . . any alleged connection between Defendants' more recent denials and Plaintiff's prior lawsuit is too remote and tenuous to establish retaliatory animus." ECF No. 31, at 10. This holding was limited, however, to the claims raised against Giroux and Kosinski. The general discussion in that section of the Court's opinion dealt with the personal liability of Norton, Szelewski, Martucci, Giroux, and Kosinski. *Id.* at 9. In the paragraph preceding that holding, the Court specifically held that Harris had successfully alleged a retaliation claim against Norton. No discussion of Adams and Behringer was contained in that paragraph. Next, the Court turned to the personal involvement of the other identified defendants and found Harris's claims wanting. *Id.* at 9-10. Then, the Court focused specifically on Giroux and Kosinski, noting Harris's argument that they were both named as defendants in his prior lawsuit. Limited solely to Giroux and Kosinski, the Court determined that the connection between their actions in this case, and their participation in Harris's prior litigation was too slim a reed to support Harris's retaliation claim in the instant case. *Id.* Contrary to the interpretation stated in Harris's Response to Concise Statement of Material Facts, that holding does not reject a plausible causal nexus between that prior lawsuit and the remaining Defendants' alleged retaliatory conduct.

[5] "[A] court may take judicial notice of relevant prior court orders, including orders in other cases." *United States v. Hoffert*, 2018 WL 4828628, at \*1 (W.D. Pa. Oct. 4, 2018) (citing *Mina v. United States Dist. Court for E. Dist. of Pennsylvania*, 710 Fed. Appx. 515, 517 n.3 (3d Cir. 2017)).

5

The record from Harris's prior lawsuit indicates that he suffered a serious injury to his right eye during a basketball game while incarcerated at SCI-Graterford. *Harris v. Atria, et al.*, 2013 WL 5777027 at \*1 (E.D. Pa. Oct. 25, 2013). The record from the case further indicates that Harris developed uncontrolled pressure in the injured eye and that prison physicians allegedly failed to provide him with adequate or proper treatment for that condition. *Id.* at \*5. After completing initial treatment, he was transferred to SCI-Albion. *Id.* While at SCI-Albion, the problem was diagnosed and the correct treatment identified, but, according to the claims asserted in the prior lawsuit, it was too late to save Harris's sight in his right eye. *Id.* Harris sued and the matter was ultimately settled. *Harris v. Atria*, E.D. Pa. No. 2:10-cv-00848, ECF No. 142, (September 22, 2014).

As the factual basis for his First Amendment retaliation claim against Defendants Norton, Adams and Behringer, Harris asserts that these three defendants retaliated against him for the filing of his prior lawsuit against the Department and for the filing of grievances while he was in the RHU. Norton is a counselor at SCI-Albion. ECF No. 23 at ¶ 18; ECF No. 33 at ¶ 18. Harris asserts that Norton retaliated by purposely delaying his request for a "Z-Code" for three-months. ECF No. 23, at 9, ¶ 51. Z-Code status entitles an inmate to be housed in a single occupancy cell. *See, e.g., Myer v. Giroux*, 2018 WL 6831147 at \*2 (W.D. Pa. Dec. 28, 2018). Harris submitted his request for a Z-Code to Norton. In his request, Harris claimed that he had been granted a Z-Code during his prior period of incarceration and stated, in part, "technically you know I am not even supposed to be in Albion because of the litigation." ECF No. 86-3 at 29. Harris claims that when he asked Norton about the delay, Norton taunted him by saying, "look at it this way, at least you have a single cell in the RHU." ECF No. 23, at 9, ¶ 51.

Harris's retaliation claim against Adams is similarly based. Adams is the Deputy

Superintendent for Centralized Services at the prison. *Id.* at 3, ¶ 15; ECF No. 33, at 4, ¶ 15.

During his previous incarceration at SCI-Albion, Adams was the Grievance Coordinator. *Id.*

Harris claims that Adams was a member of at least one Program Review Committee ("PRC")

that denied his request for a Z-Code. Harris alleges that Adams failed to provide a reason for

keeping him in the RHU and that she did so because Harris successfully prosecuted a lawsuit

against officials and employees of the Department. ECF No. 23 at ¶¶ 52, 77.

Behringer worked as a corrections officer in the RHU at SCI-Albion during Harris's

period of incarceration. Harris's retaliation claim against Behringer asserts that he fabricated a

misconduct charge against him while he was confined to the RHU. Harris claims that Behringer

filed the false misconduct charge because of Harris's prior lawsuit against the Department.

Harris also raises an Eighth Amendment claim against Defendant Behringer based on

Behringer's alleged spitting in his food from approximately August 12, 2015 until August 21,

2015. ECF No. 23 at ¶¶ 81, 84.

Having identified the claims at issue and the factual basis for those claims, the Court now

turns to the threshold question of whether Harris has exhausted the administrative remedies

available to him as to each of the remaining claims. *See Rinaldi v. United States*, 904 F.3d 257,

264-65 (3d Cir. 2018) (noting exhaustion of administrative remedies is a threshold question).

V.    Exhaustion of Administrative Remedies

      A.    Governing Law and Standards

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), provides that "no

action shall be brought with respect to prison conditions under section 1983 of this title . . . by a

prisoner confined in any jail, prisons, or other correctional facility until such administrative

remedies as are available are exhausted." *Id.* In enacting the PLRA, Congress replaced the

"weak exhaustion provision" of prior statutes with the "invigorated" administrative remedy of

exhaustion. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). The requirement that an inmate exhaust

administrative remedies applies to all inmate suits regarding prison life, including those that

involve general circumstances as well as particular episodes. *Porter v. Nussle*, 534 U.S. 516

(2002).

     The exhaustion of administrative remedies is "a non-jurisdictional prerequisite to an

inmate bringing suit and, for that reason, ... it constitutes a 'threshold issue that courts must

address to determine whether litigation is being conducted in the right forum at the right time.'"

*Rinaldi,* 904 F.3d at 265 (quoting *Small v. Camden Cnty.*, 728 F.3d 265, 270 (3d Cir. 2013)). The

purpose of the exhaustion requirement is "to alert prison officials to a problem, not to provide

personal notice to a particular official that he may be sued." *Williams v. Beard*, 482 F.3d 637,

640 (3d Cir. 2007). The exhaustion requirement is not a technicality, but instead a federal law

which federal district courts are required to follow. *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir.

2000) (by using language "no action shall be brought," Congress has "clearly required

exhaustion"). *See also Woodford,* 548 U.S. at 85.

     The PLRA requires "proper exhaustion," meaning that a prisoner must complete the

administrative review process in accordance with the applicable procedural rules of that

grievance system. *Woodford*, 548 U.S. at 87-91 ("Proper exhaustion demands compliance with

an agency's deadlines and other critical procedural rules . . ."). Importantly, the exhaustion

requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . .

appeal." *Id.* at 83. "Compliance with prison grievance procedures, therefore, is all that is

required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to

8

comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

However, the PLRA contains a "textual exception to mandatory exhaustion." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). "Under § 1997e(a), the exhaustion requirement hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Supreme Court has defined "available" in the exhaustion context as "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." *Booth v. Churner*, 532 U.S. 731, 737-38 (2001) (quoting Webster's Third New International Dictionary 150 (1993)). Where prison staff "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," administrative remedies are not available and exhaustion is not required. *Woodford*, 548 U.S. at 102; *Ross*, 136 S. Ct. at 59-60. *See also Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) ("A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it."); *Berry v. Klem*, 283 Fed. Appx. 1, 5 (3d Cir. 2009) ("[Plaintiff] argued that the administrative grievance process was not available to him because he feared serious harm for filing a grievance. While that claim may not ultimately prevail, his allegations put in question the availability of the remedy."). Notably, the Court of Appeals for the Third Circuit joined several other Circuits in holding that "administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm." *Rinaldi*, 904 F.3d at 267 (citing precedential opinions from the Second, Seventh, Ninth, Tenth, and Eleventh Circuit Courts of Appeal).

It is not a plaintiff's burden to affirmatively plead exhaustion. *Jones v. Bock*, 549 U.S. at 217 (". . . failure to exhaust is an affirmative defense under the PLRA, and thus inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Rinaldi,* 904 F.3d at 268 (citing *Tuckel v. Grover*, 660 F.3d 1249, 1253-54 (10th Cir. 2011)). In order to defeat a failure-to-exhaust defense, an inmate must prove "(1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." *Id*. at 269-70. Importantly, each specific, individual claim must be exhausted. *Woodford*, 548 U.S. at 85. Accordingly, Harris cannot argue exhaustion generally simply because he filed "twenty-five grievances and thirteen inmate requests while he was in the hole for 108 days." ECF No. 85 at 14.[6]

B. Harris's Grievance History

The parties agree that while housed in the RHU, Harris filed numerous grievances. ECF No. 69 at ¶¶ 11, 12, 13, 22, 23,25; ECF No. 84, at ¶ 3; ECF No. 88, at ¶ 3. And, the parties generally agree on the requirements of the relevant inmate grievance and appeal procedures. *See* ECF No. 88 at ¶ 4, 5, 6, 7. Specifically, because Harris was housed in the RHU, he was required to place a completed grievance form in his cell door. Upon doing so, a prison staff member was

---

[6] The requirement that each specific claim be exhausted negates Harris's argument that his grievances were being "slow-rolled" and "pigeonholed." ECF No. 85 at 16. This is a general characterization, lacking specific reference to any particular grievance and devoid of explanation of how it related to either his retaliation claim or his Eighth Amendment claim. *See, e.g., Locke v. Pa. DOC*, 2015 WL 1285882 at *3 (M.D. Pa. March 20, 2015) (noting that prisoners must exhaust all available remedies as to each claim, "even when those remedies cannot grant the relief the prisoner seeks") (citation omitted).

10

to collect the grievance, which is not sealed or placed in any type of envelope, from the cell door and place it in the grievance box. This special procedure is necessary because inmates in the RHU cannot place a grievance in the appropriate box themselves. *Id.* at ¶ 4-7.

Harris filed his first grievance within days of his arrival at SCI-Albion and his immediate placement in the RHU. ECF No. 84 at ¶ 8; ECF No. 88 at ¶ 8.[7] This was grievance number 566943 and concerned Harris's bringing his shower shoes and soap dish with him from the Crawford County jail. ECF No. 86-3 at 3-6. All told, the record includes twenty-five grievances and thirteen inmate requests filed by Harris while he was confined to the RHU. ECF No. 86-3 at 2-46; ECF No. 86-4, at 2-47. Of those, Harris identifies the following grievances and inmate requests as relevant to his remaining claims:

- Grievance 567999 (May 23, 2015) concerning the lack of accommodations for disabled persons in the RHU. ECF No. 86-3 at 11-12.

- Grievance 569626 (May 28, 2015) concerning Harris's fear that he will suffer some form of retaliation for his prior successful lawsuit against the Department of Corrections. ECF No. 86-3 at 23-28.

- Grievance 570372 (June 4, 2015) concerning the characterization of his grievances as "untimely" and his concerns that this was being done as retaliation. ECF No. 86-3 at 35-36.

- Grievance 570377 (June 3, 2015) concerning the arbitrary and retaliatory nature of Harris's continued housing in the RHU. ECF No. 86-3 at 37-39.

- Inmate Request (June 8, 2015) asking for a letter to the superintendent relating to the denial of his grievances. ECF No. 86-3 at 40.

- Inmate request (June 23, 2015) stating Harris's belief that his grievances are being denied out of retaliation. ECF No. 86-3 at 47.

---

[7] Harris states that his first grievance was filed within three days of his arrival; the Defendants say it was four days. ECF No. 84 at ¶ 8; ECF No. 88 at ¶ 8. The difference of one day is not material. The undisputed fact is that Harris began to file grievances soon after his placement in the RHU.

- Inmate Request (June 28, 2025) stating Harris's belief that he as being held in the RHU as an arbitrary punishment. ECF No. 86-4.

- Grievance 573604 (June 29, 2015) stating Harris's belief that he is being held in the RHU "for non[-]disciplinary reasons." ECF No. 86-4 at 3-4.

- Grievance 573956 (June 29, 2015) concerning Harris's request for a phone call to his attorney and a judge because his confinement to the RHU was for non-disciplinary reasons. ECF No. 86-4 at 5-9.

- Grievance 577257 (July 20, 2015) concerning improper meal distribution procedures being used by Defendant Behringer. ECF No. 86-4 at 24-26.

- Inmate Requests (August 10, 2015 and August 13, 2015) requesting contact with Internal Affairs because of Harris's belief that he is "being threatened and abused." 40, 42-43.

    C.      Harris properly exhausted administrative remedies regarding his First Amendment retaliation claim.

As noted above, Harris alleges that the defendants retaliated against him for filing his prior lawsuit and for filing various grievances during his confinement in the RHU. Defendants argue that Harris failed to follow the proper grievance procedures and, thus, failed to exhaust his administrative remedies. The Court disagrees.

The Court measures whether Harris "exhausted his administrative remedies against the yardstick of the grievance procedures set forth in the relevant [Department] regulations." *Rinaldi*, 904 F.3d at 265. Inmates incarcerated with the Pennsylvania Department of Corrections have the following administrative grievance process available to them:

> The DC-ADM 804 grievance system consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee, also known as the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), within fifteen working days, and the inmate will receive a final

> determination in writing within thirty days. *See Booth v. Churner,*
> 206 F.3d 289, 293 n.2 (3d Cir. 1997), *aff'd,* 532 U.S. 731 (2001).
> DC-ADM 804 provides that the grievance must include "a
> statement of the facts relevant to the claim," "shall identify
> individuals directly involved in the events," and "shall specifically
> state any claims he wishes to make concerning violations of
> Department directives, regulations, court orders, or other law."
> DC-ADM 804, § 1(A)(11).

*Hughes v. Hayes,* 2018 WL 6697184 at \*4 (W.D. Pa. Dec. 20, 2018). The parties agree that

Harris only completed the grievance process outlined above in two instances: Grievance No.

569626 and Grievance No. 569848. Grievance No. 569626 specifically mentions the retaliation

claim he now brings.

Harris grieved the following: first, that during his prior period of incarceration, he was

previously transferred out of SCI-Albion due to a "conflict of interest" stemming from litigation

he brought against the prison and other departmental officials. ECF No. 86-3 at 27. He further

states that he received "a million dollar plus settlement" before being transferred. *Id.* Next,

Harris grieved that upon returning to SCI-Albion for a parole violation, he was unjustifiably kept

in the RHU and that he feared "that some form [of] retaliation will be affronted towards me in

the form of frivilous (sic) misconducts . . ." *Id.* He stated his inability to "voice objection" to his

confinement in the RHU for "fear of being retaliated against." *Id.* at 28. He connected this fear

of retaliation with his "being awarded a settlement." *Id.* And, Harris specifically states that

"[t]his grievance deals with and addresses me being retaliated against by being placed in the

RHU for this extended period" under false pretenses. *Id.* And this grievance was appealed to

final review. ECF No. 70-4 at 3, ¶12. Thus, the Court concludes that Harris properly exhausted

his administrative remedies as to his First Amendment retaliation claim.[8]

---

[8] Indeed, Harris argues that Grievance No. 569626 exhausted only his First Amendment retaliation claim. *See* ECF
No. 85, at 15 ("Per the Defendants, Grievance #569626 relates to Harris 'being held in the Restrictive Housing Unit

13

D.    Harris failed to exhaust administrative remedies regarding his Eighth Amendment claim.

The more difficult question is whether Harris exhausted his Eighth Amendment claim against Behringer. Harris alleges that Behringer violated his Eighth Amendment rights by tampering with his food, thereby causing Harris to go without eating for eleven days. Harris did not mention this claim in either of the grievances he exhausted. Grievance No. 569626 was filed on May 28, 2015, several months before the alleged food interference by Behringer. ECF No. 86-3, at 27. The only other grievance Harris appealed to final review was Grievance No. 573956, which was filed on June 29, 2015—also well before any accusation that Behringer was spitting in his food. ECF No. 86-4, at 9. Moreover, there is no unexhausted grievance anywhere in the record discussing the allegations that Behringer tampered with Harris's food. [9] As noted, failure to exhaust under the PLRA is an affirmative defense, with the burden of proof on the defendant. *Ray,* 285 F.3d at 295. Defendants have met their burden.

The burden shifts now shifts to Harris, and he must show that such remedies were unavailable. *Rinaldi,* 904 F.3d at 268. That is, the onus is now on Harris to point to evidence in the record of the unavailability of the grievance process for his Eighth Amendment claim. *Id.* He has not done so.

There are several ways in which administrative remedies may not be available to prisoners. The Supreme Court has noted, for example, an administrative remedy is unavailable: when a prison grievance system "operates as a simple dead-end—with officers unable or

out of retaliation.'" ECF No. 68. That is the heart of Harris's First Amendment retaliation claim. *See* ECF No. 23, ¶¶ 104-111.").

[9] The prison medical record backs this up. Progress notes indicate that Harris refused to inform prisoner officials of the reasons for his refusal to eat. On August 19, 2015, Harris told prisoner health care providers that he refused to eat because "of my mistreatment. I'll go into details with internal affairs." ECF No. 86-15 at 2. Later that same day, he again refused to say why he would not eat, other than the nonspecific claim of "mistreatment." *Id.*

14

consistently unwilling to provide any relief to aggrieved inmates," or when the process is "so opaque that it becomes, practically speaking, incapable of use," because an ordinary prisoner cannot discern or navigate it, or in situations where "prison administrators thwart inmates from taking advantage of a grievance process through machination, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016). The Court of Appeals for the Third Circuit has also indicated that exhaustion is unavailable to an inmate where a "plaintiff alleged he was given misleading filing instructions, resulting in a procedural default, and argued 'essentially that officials in the security department of the prison thwarted his efforts to exhaust his administrative remedies.'" *Rinaldi*, 904 F.3d at 267 (quoting *Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002)). Exhaustion is unavailable where the prison failed to timely respond, under its own rules, to a prisoner's grievance and then continuously ignored the prisoner's follow-up requests for a decision. *Id.* (quoting *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016)).

No evidence similar to any of the foregoing situations can be found in this record. Harris first argues that the grievance process was rendered unavailable to him because prison officials were "slow-rolling" responses to his grievances and "pigeonholing" his grievances as "untimely." ECF No. 85 at 16. Harris applies these undefined characterizations generally to all of the grievances he filed during his incarceration in the RHU. He notes that because he was confined to the RHU, he must turn his grievance paper over to a guard who then places it in the grievance box—prisoners in the RHU cannot do so themselves and must instead rely on the guard to make sure their grievances are appropriately lodged in the system. *Id.* Behringer does not dispute this process. ECF No. 88, at 2, ¶¶ 4-6; ECF No. 86-1 at 25.

But again, this is a general observation, which cannot be specifically linked to any frustration of Harris's ability to exhaust his Eighth Amendment claim because the record contains no evidence that Harris ever attempted to grieve that claim to prison officials. In his amended complaint, Harris claims that Behringer thwarted his efforts to pursue a grievance by refusing to take his grievance forms to the grievance box. ECF No. 23 at 14, ¶ 83. But there is no evidence in the record to support this assertion. Behringer was not questioned in his deposition regarding this accusation. And, although Behringer acknowledged that Harris filed grievances against him, he testified to being generally unaware of any other grievances Harris had filed. ECF No. 86-1, at 133-34. For his part, Harris offers nothing beyond the allegation of his amended complaint (which he does not reiterate in his declaration), that could provide the Court with the requisite factual basis to determine whether the administrative remedies were effectively unavailable. Of course, it is now well-established that "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citing Fed. R. Civ. Pro. 56(e)). *See, e.g., Jones v. Roque*, 2013 WL 4426515 at \*3 (N.D. Cal. Aug. 15, 2013).

Harris alleged in his amended complaint that unnamed Defendants refused to place his grievances in the box, threw them away, delayed their processing, and denied them without adequate explanation or justification, thereby thwarting his attempts to utilize the grievance process. ECF No. 23 at 16, ¶97. As before, Harris has the burden to provide evidence to support these allegations, and he has not done so. Thus, the record does not support the conclusion that prison officials thwarted Harris's attempts to exhaust this claim by interfering with his attempts to avail himself of administrative remedies.

Harris also argues that administrative remedies were unavailable to him due to his fear of retaliation from prison officials. The Court of Appeals for the Third Circuit recently recognized that "administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm." *Rinaldi*, 904 F.3d at 267 (citing *McBride v. Lopez*, 807 F.3d 982, 986-87 (9th Cir. 2015)); *see also Tuckel v. Grover*, 660 F.3d 1249, 1252-53 (10th Cir. 2011); *Turner v. Burnside*, 541 F.3d 1077, 1084-86 (11th Cir. 2008); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006); *Hemphill v. New York*, 380 F.3d 680, 686-87 (2d Cir. 2004). Citing the Tenth Circuit's decision in *Turkel*, the Third Circuit explained that it is "difficult to accept the proposition that an administrative remedy is available in any meaningful sense if its use will result in serious retaliation and bodily harm." *Id*. at 267 (citing *Turkel*, 660 F.3d at 1252).

In *Rinaldi*, the Court of Appeals announced a two-part test to determine whether an inmate can defeat a failure-to-exhaust defense based on a fear of retaliation by prison officials. First, an inmate must show "that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance." *Id*. at 269. This is an objective inquiry. *Id*. at 268. The second inquiry is subjective: whether the retaliation or threat thereof "actually did deter this particular inmate" from filing a grievance. *Id*. at 269. Assuming without deciding the satisfaction of the objective component of the *Rinaldi* test, Harris cannot meet the subjective element. The record conclusively shows that Harris was undeterred in filing grievances and inmate requests during the time period he refused his meals.

Harris began to refuse his meals on August 12, 2015. ECF No 70-16 at 28. That same day, he filed an appeal to the facility manager of Grievance No. 577257. ECF No. 86-4 at 26. The next day, August 13, 2015, Harris filed an inmate request to staff form with prison

17

personnel. *Id*. at 42. On August 14, 2015, the third day of his refusal to eat, the record contains a reference to Grievance No. 582099, which Harris apparently filed. *Id*. at 44.[10] Then, on August 17, 2015, the sixth day of his refusal of meals, Harris filed Grievance No. 582100. *Id*. at 46. Thus, even if the record contained evidence of Behringer's alleged actions, or of threats or actions he made to retaliate against Harris for filing grievances about his actions, Harris was undeterred. Therefore, the Court cannot conclude that retaliation or the threat thereof actually deterred Harris from filing grievances. Administrative remedies were therefore available to Harris for his Eighth Amendment claim, and he did not avail himself of them. Thus, his Eighth Amendment claim was not exhausted.

V.      Summary Judgment is Denied on Harris's First Amendment Retaliation Claim.

"Retaliating against [an inmate] for the exercise of his constitutional rights is unconstitutional." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir.2012) (citing *Mitchell v. Horn*, 318 F.3d 523, 529–31 (3d Cir.2003)). To prevail on a claim of retaliation, a prisoner-plaintiff must first establish that he was engaged in constitutionally protected conduct. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). Harris has done so here. The filing of his prior lawsuit against the Department was constitutionally protected conduct.[11] *Petoff v. Yeaney*, 2018 WL 1522191 at *8 (W.D. Pa. March 28, 2018) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). *See also Williams v. Varano,* 2015 WL 1470763 at *11 (M.D. Pa. March 31, 2015). So too is the filing of grievances in the prison system. *Ingram v. Lane*, 2018 WL 3370673, at *4 (W.D. Pa. May 22, 2018). And,

---

[10] Although the prison's Initial Review Response to this grievance is in the record (noting the date of the original filing of the grievance), the grievance itself is not provided.

[11] Contrary to Harris's interpretation, the Court again clarifies that its prior ruling on Defendants' Motion to Dismiss did not reject Harris's prior lawsuit as a basis for his retaliation against the remaining Defendants. *See supra.*, n. 3.

18

requesting a disability accommodation is constitutionally protected conduct. *See, e.g., Prince v. Dep't Social Servs. of Oneida Cty.*, 2016 WL 3526071 at *11 (N.D.N.Y. May 5, 2016).

Next, Harris must establish that he suffered, at the hands of a state actor, an adverse action that would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Rauser*, 241 F.3d at 333.[12] Harris contends that, in retaliation for filing his prior lawsuit, for the continued filing of grievances, and for requesting accommodations for his disabilities, he was (1) held in the RHU for 108 days, (2) that prison official denied his request for items needed for his disability, such as a case for his glasses, (3) that he was prevented from telephoning his attorney and family, (4) that Defendant Behringer fabricated a misconduct charge against him, and (5) that he was deprived of food for eleven days.[13] Separately, and certainly together, these actions are sufficient to deter a prisoner of ordinary firmness from exercising his or her constitutional rights. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (several months in disciplinary confinement would deter a reasonably firm prisoner from exercising First Amendment rights); *Smith, v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (fabricated misconduct charge against inmate sufficiently deterring); *Williams*, 2015 WL 1470763 at *11 (serving inmate tampered-with food sufficiently deterring); *Jones v. Mathai*, 2010 WL 1286390 at *4 (E.D. Mich. March 31, 2010) (cancellation of accommodation sufficiently deterring); *Porter v. Van Tatenhove*, 2012 WL 405622 at *6 (W.D. Mich. Feb. 8, 2012) (denying telephone call to attorney may be sufficiently deterring).

---

[12] That Defendants Norton, Adams, and Behringer are state actors is not in dispute. *See Coleman v. Tice*, 2018 WL 5724125 at *3, n. 4 (W.D. Pa. Oct. 10, 2018) (citing *Lorenzano v. Link*, 2014 WL 5795568 (W D. Pa. 2014)).

[13] Here, Defendants' analysis completely misses the mark. For example, Plaintiff need not have a constitutional right to a particular housing assignment in order for the denial of a housing assignment to be retaliatory. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 1990).

19

As Harris has satisfied the first two elements, he must now prove a causal link between his constitutionally protected conduct and the adverse actions. *Rauser*, 241 F.3d at 333. To do so, he must prove that his constitutionally protected conduct was "a substantial or motivating factor" for the adverse actions. *Id.* (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). To show a causal connection, Harris must demonstrate "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). "In the absence of that proof, the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." *Lauren W.*, 480 F.3d at 267 (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). Here, all of the alleged adverse actions are close in time to the protected activity (filing grievances and requesting accommodations) as they all occurred within the 108-day period of Harris's RHU confinement. When taken together, these alleged adverse actions also demonstrate a pattern of antagonism toward Harris sufficient to establish the required causal link. Thus, he has made out a prima facie case.

Defendants, however, may yet prevail by proving by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (internal quotation and citation omitted). Put another way, Defendants may defeat Harris's retaliation claim and win summary judgment if they can point to evidence that demonstrates that they would have taken the same action based on a legitimate penological reason. *Id.* (a defendant must prove by a preponderance of the evidence that it "would have

made the same decision absent the protected conduct for reasons reasonably related to penological interest"); *Rauser*, 241 F.3d at 334. Each alleged adverse action against Harris will be addressed separately.

      1.    Harris's confinement in the RHU for 108 days.

Defendants argue that the lack of available bed space (from May 11, 2015 to August 9, 2015) was a legitimate penological reason for keeping Harris confined to the RHU. In support of this argument, Defendants point to a report from the PRC dated May 22, 2015, explaining that Harris would remain on Administrative Custody status due to a lack of bed space in the general population. ECF No. 70-7 at 1.[14] However, Defendants have provided no evidence of a lack of bed space from May 23, 2015 until August 10, 2015. For his part, Harris has brought forth evidence showing that between May 11, 2015 and August 10, 2015 there were an average of twenty-three beds available per day and evidence which indicates that there was never fewer than two beds available in general population on any given day during that time period. *See* ECF No. 86-7, at 1-81. Defendant Norton additionally testified that inmates changing bed/cell assignments was commonplace during this time period. ECF No. 86-10 at 33. Thus, there is a genuine issue of fact regarding available bed space, which raises the question whether the Defendants had a legitimate penological reason for confining Harris to the RHU for 108 days. This precludes the entry of summary judgment in favor of the Defendants.

      2.    Fabricated Misconduct Charge

Harris claims Behringer also retaliated against him by issuing a false misconduct charge. Defendants claim that Harris's failure to follow proper meal distribution procedures justified the issuance of the misconduct, which extended his stay in the RHU from August 10, 2015 to

---

[14] Harris appears to have been initially assigned to the RHU pending medical clearance. ECF No 70-6 at 1.

August 27, 2015. *See* ECF No. 86-5 at 2. "In general, 'most prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence' because courts afford prison officials 'great deference in the context of prison disciplinary proceedings.'" *Whitehead v. Wetzel*, 720 Fed. Appx. 657, 663 (2017) (quoting *Watson v. Rozum*, 834 F.3d 417, 425 (3d Cir. 2016)). "To determine whether the prison officials' discipline of the prisoner was within the bounds of their broad discretion, courts evaluate the 'quantum of evidence' of the underlying misconduct charges." *Id.* (citing *Watson*, 834 F.3d at 426). Where an inmate has been found guilty of the charges in a purportedly retaliatory misconduct report after a disciplinary hearing has taken place, the finding of guilt is considered strong evidence that the misconduct report was issued for a legitimate penological reason. *See Nifas v. Beard*, 374 Fed. Appx. 241, 244 (3d Cir. 2010). A finding of guilt on a misconduct charge, combined with "a meaningful written statement of the evidence relied on and the reasons for the action taken," establishes a "quantum of evidence" of misconduct sufficient to warrant summary judgment. *Williams v. Folino*, 664 Fed. Appx. 144, 148-49 (3d Cir. 2016) (quoting *Watson*, 845 F.3d at 426; *Dyson v. Kocik*, 689 F.2d 466, 467 (3d Cir. 1982). "Prison officials are entitled to summary judgment for disciplining a prisoner, even if their actions were motivated by animus, as long as the prisoner's offenses 'were so clear and overt' such that there was no genuine issue of material fact that the officials' actions were reasonably related to legitimate penological interests." *Batista v. Eckard*, 2018 WL 1428163, at *8 (M.D. Pa. March 22, 2018) (citing *Carter,* 292 F.3d 154). Here, the quantum of record evidence pertaining to the misconduct report at issue is insufficient, thereby raising a genuine issue of material fact whether the misconduct charge against Harris was premised on a legitimate penological issue.

On August 10, 2015, Behringer issued Misconduct No. B691228 charging Harris with the Class 1 offense of using abusive, obscene, or inappropriate language to an employee (Class 1, charge 33) and the Class 1 offense of refusing to obey an order (Class 1, charge 35). ECF No. 70-8 at 1. Behringer described the incident as follows: "On the above date and approximate time while picking up trays on C-pod, this reporting officer gave [inmate] Harris, George DQ2948 several direct orders to come to his door with his tray. I/M Harris DQ2948 relied 'YOU ARE A FUCKING RACIST, I AIN'T GIVING YOU THIS FUCKING TRAY TILL YOU LEARN HOW TO TALK.' With this statement all orders were refused." *Id.*

Harris testified at a hearing on this misconduct charge and denied making such statements. *Id.* at 2. He also denied refusing to give back his meal tray. *Id.* He asked that the hearing officer review video footage of the incident. The hearing officer apparently did so, noting in his report that ". . . reviewed camera footage. Nothing relevant shown, camera rotating in normal operation." *Id.* Harris also offered his written version of the events. *Id.* at 4. He stated that he did not see or hear Behringer at the time of incident. Harris pointed out that he is visually and hearing impaired, and has a sign on his cell door indicating as much. *Id.* Due to these disabilities, Harris maintains he could not see or hear Behringer make the request for the meal trays. *Id.* He further alleges that the misconduct was in retaliation for him contacting internal affairs about Behringer and for securing a "1.9 million dollar settlement" against the Department in his earlier lawsuit. *Id.*

In finding Harris guilty, the hearing examiner stated that be believed Behringer over Harris's version of events. *Id.* at 2. Typically, the quantum of evidence in these cases includes testimony from other corrections officers and/or other inmates, a written statement of the evidence relied on, the reasons for the action taken, and video footage of the incident under

review. *See, e.g., Rivera v. McCoy*, 2017 WL 3980790, at *3 (M.D. Pa. Sept. 11, 2017); *Williams*, 664 Fed. Appx. At 148-49 (quoting *Watson*, 834 F.3d at 426); *Batista, supra.* at *8-9. *See also Dyson*, 689 F.3d at 467 (finding of misconduct must include "a meaningful written statement of the evidence relied on and the reasons for the action taken."). The hearing examiner in this case based his decision on a "preponderance of evidence," but no evidence or testimony from other corrections officers in support of Behringer's version of events was offered. Nor can the hearing examiner's report be considered a "meaningful written statement of the evidence relied on and the reasons for the action taken." *Id.* And as previously noted, the video footage revealed nothing. ECF No. 70-8 at 2.

Harris appealed the misconduct, once again arguing that he could not see or hear Behringer's order. *Id.* at 6. In affirming the hearing examiner's decision, the PRC noted that "the evidence was sufficient to support the decision of the Hearing Examiner." *Id.* at 7. It appears, however, that the only evidence considered was Behringer's version of the incident.

Further, although Behringer issued a misconduct against Harris on August 10, 2015, Harris had expressed his fear of having a false misconduct charge issued against him well before that—actually within weeks of his return to SCI-Albion. ECF No. 86-3 at 27. Less than a month before being issued the misconduct, he filed a grievance against Behringer relating to meal distribution procedures. ECF No. 86-4 at 24. And, the misconduct in question was issued the same date Harris filed an inmate request asking to speak to a representative of the Department's internal affairs office. ECF No. 86-4 at 40.

The Court readily acknowledges "that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned." *Rauser*, 241 F.3d at 334. However, in this case, given the minimal

24

quantum of evidence supporting the guilt on Misconduct No. 691228, a genuine issue of material fact exists whether there was a legitimate penological reasons for the issuance of the misconduct charge, thereby precluding the award of summary judgment to the Defendants.

### 3. Other Adverse Actions

The Defendants offer no argument on the remaining adverse actions Harris identifies and the Court is under no obligation to search the record in order to find evidence to support their position. *Granny's Alliance Holdings, Inc. v. Farrow Construction Specialties, Inc.* 2013 WL 12121497, at *4 (S.D. Miss. July 12, 2013). At the summary judgment stage, it is not the court's responsibility to go beyond the arguments and materials referenced in the parties' briefs. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (noting that "[t]here is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment" and stating that "the onus is upon the parties to formulate arguments . . ."). Further, the Court is not obligated to make Defendants' case for them or to "wade through and search the entire record" for some specific facts that might support their motion. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

Thus, Defendants have presented no evidence to suggest that their actions in allegedly depriving Harris of food, telephone access, and accommodations for his disability were in furtherance of a legitimate penological interest. *See Turner v. Safley*, 482 U.S. 78, 87 (1987). These alleged adverse actions, therefore, deserve no deference from the Court and a jury could reasonably determine that they were retaliatory. Summary judgment is therefore inappropriate.

VI.     Conclusion

Accordingly, summary judgment will be **GRANTED** to Defendant Behringer on Harris's Eighth Amendment claim due to a failure to exhaust administrative remedies. Summary Judgment will also be **GRANTED** to Defendants Giroux and Kosinski on Harris's claims under the ADA and Rehabilitation Acts. Defendants Norton, Adams, and Behringer's motion for summary judgment on Harris's First Amendment Retaliation claim is **DENIED** and that claim will proceed to trial. An appropriate order will be filed separately.

Richard A. Lanzillo
United States Magistrate Judge

Entered this 25th day of January, 2019.